## JOSHUA MANWARING, Appellant, v. MISSOURI LUMBER & MINING COMPANY, Appellant.

**Division Two, December 22, 1906.**

1. **TAX DEED: Judgment Against Patentee: Burnt Record.** Where the land has been patented and conveyed by the patentee to another and that grantee's deed recorded and the record books destroyed, before suit and a judgment for taxes against the patentee as the apparent record owner, a sheriff's deed in pursuance to such judgment conveys no title to the purchaser at the sheriff's sale. The real owner having put his deed of record and thereby done all the law requires of him, it is not his fault that the record is destroyed by fire or otherwise.

2. ———: ———: **Laches.** Where the land was patented prior to 1859, and in that year conveyed by the patentee to defendant's grantor and the deed recorded, and the record was destroyed by fire in 1870, and re-recorded in 1894, and suit was brought against the patentee in 1881 for taxes for 1878, and judgment obtained and the land sold thereunder to plaintiff who has since, up to the time of bringing suit in 1902, paid taxes thereon, defendant is not estopped by laches from setting up his title as a defense in a suit by plaintiff to quiet the title, the land being wild and unoccupied by any one.

3. ———: **Refunding Taxes Paid: Act of 1903: Not Available to Plaintiff.** The act of 1903, providing that all taxes paid by defendant are to be refunded and made a lien on the land, is not available to plaintiff. By the express terms of the statute the right to have taxes paid refunded, is confined to defendant.

4. ———: ———: ———: **Passed Subsequent to Suit.** An act passed subsequently to the institution of a suit cannot affect the rights or interests of parties thereto.

5. ———: ———: ———: **Retrospective.** The act of 1903 in reference to the refunding of taxes to defendant by plaintiff in a suit to quiet title or ejectment, is not retrospective; it creates property rights which did not theretofore exist.

Appeal from Shannon Circuit Court.— *Hon. W. N. Evans,* Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*James Orchard* and *O. L. Haydon* for plaintiff-appellant.

(1) The tax deeds of May 5, 1881, based on judgment for taxes against patentees and record owners when said taxes were assessed, is sufficient to vest in plaintiff the legal title as against defendant who claims under deeds the record of which was burned December, 1870, it not appearing that either the collector or purchaser at the tax sale had any notice of said deeds. Allen v. Ray, 96 Mo. 547; Payne v. Lott, 90 Mo. 676; Evans v. Robberson, 92 Mo. 192; Vance v. Corrigan, 74 Mo. 94. (2) Whether the sheriff's deed passed the legal title or not, defendant by his laches is estopped from setting up his title at this late day. Hequemborg v. Edwards, 155 Mo. 522; Bales v. Berry, 51 Mo. 449; Austin v. Loring, 63 Mo. 22; Bispham's Principles of Equity (6 Ed.), secs. 39, 284; Tiedeman on Real Property (1883 Ed.), p. 544; Morrison v. Turnbaugh, 192 Mo. 447. (3) The court was correct in allowing taxes that had been paid out by the plaintiff and his grantors on the lands described in plaintiff's petition, for the reason that it was a lien on the land and paid by the purchasers in good faith, believing they had title to the land. (4) The sale under a judgment for back taxes under the revenue law of 1877 to enforce the tax lien is a judicial sale. State ex rel. v. Sargent, 12 Mo. App. 223. Where an action is wholly or part *in rem*, a sale under judgment or decree therein is a judicial sale. Tiedeman on Sales, sec. 256. A suit to foreclose a tax lien is an action *in rem* after the owners are brought in by process. The judgment is one *in rem,* the execution goes against the property, and the sheriff sells the property and not the interest of the particular party in it. Allen v. McCabe, 93 Mo. 139; Hilton v. Smith, 134 Mo. 499; Welshear v. Kelley, 69 Mo. 353. A sale by a public administrator, in executing an order of the probate court, is a judicial sale, and the general rule

is that the purchaser at such sale buys at his peril. Estes v. Alexander, 90 Mo. 458. (5) There being no statutory law as in the case at bar, then equity says what shall be done, and that covers all such cases as the one we now have before us. The rule is laid down in Story about as follows: That if any case should happen which is not regulated by such express or written law it should have for law a natural principle of equity which is the universal law extending to everything. Story's Equity Jurisprudence (12 Ed.), sec. 4. (6) Taxation is supposed to be for the benefit of the person taxed; that for raising a general revenue is imposed primarily for his protection as a member of society, both in his person and his property in general, and hence the amount assessed against him to be charged upon his property, etc. Neenan v. Smith, 50 Mo. 529. Everyone must take notice that his property is assessed each and every year and his taxes become payable every year, and it is his duty to pay them promptly. Unpaid taxes constitute a lien on the land, which is prior and paramount to all other liens. Fleckenstein v. Baxter, 114 Mo. 496; McLean v. Martin, 45 Mo. 393; Wilchinsky v. Cavender, 72 Mo. 192; Cunningham v. Anderson, 107 Mo. 377; Newell on Ejectment, sec. 48. The rule is laid down that persons who have paid taxes are entitled to be reimbursed. Lington v. Copeland (S. C.), 10 S. E. 616; Schafer v. Causey, 76 Mo. 365.

*John C. Brown* and *Orr & Luster* for defendant-appellant.

(1) A deed once recorded is good against a deed subsequently made and recorded from the grantor, even if the record of the first deed was destroyed before the making and recording of the second. Crane v. Dameron, 98 Mo. 570; Greer v. Mo. Lumber & Mining Co., 134 Mo. 92; Wier v. Lumber Company, 85 S. W. 342.

(2) A sheriff's deed based on a judgment for taxes does not pass the title of one not a party defendant in the tax suit, who claims under a deed recorded prior to the commencement of the tax suit, even if the record of said deed was destroyed before the institution of the tax proceedings. Crane v. Dameron, 98 Mo. 570; Greer v. Mo. Lumber & Mining Company, 135 Mo. 92; Wier v. Lumber Co., 85 S. W. 342. (3) That part of the judgment declaring a lien in favor of plaintiff for taxes paid is erroneous and should be reversed. The act of 1903, having been passed and approved since the institution of this suit, cannot affect the rights or interests of the parties thereto. Burkham v. Manewal, 94 S. W. 520; Barber Asphalt Paving Co. v. Ridge, 169 Mo. 376. (4) Prior to the passage of the act of March 6, 1903, no recovery could be had for taxes paid by one under circumstances similar to the case at bar. Burkham v. Manewal, 94 S. W. 520; Rowe v. Current River Land & Cattle Co., 99 Mo. App. 158; Carter v. Phillips, 49 Mo. App. 319; Petring v. Current River Land & Cattle Company, 85 S. W. 933. (5) Said act by its terms and provisions does not apply to the facts in this case under the pleadings and the plaintiff is not entitled to a lien for the taxes paid by him. The statute is in derogation of the common law and must be strictly construed. Laws 1903, p. 254; Petring v. Current River Land & Cattle Company, 85 S. W. 933; Carriage Co. v. Reid, 99 Mo. App. 415; Judson v. Smith, 104 Mo. 61; Thompson v. Union Elevator Co., 77 Mo. 520. (6) But the language of the act points to the future. It should be construed as prospective in its operation. By its terms it does not and under the Constitution it cannot act restrospectively so as to entitle the plaintiff herein to recover taxes paid prior to the passage of this act. Art. 2, sec. 15, Constitution; Petring v. Current River Land & Cattle Company, 85 S. W. 933; Gladney v. Sydnor, 172 Mo. 319; Leete v. State Bank, 115 Mo.

184; Reed v. Swan, 133 Mo. 101; State ex rel. v. Ferguson, 62 Mo. 77; State ex rel. v. Green, 78 Mo. 188; State ex rel. v. Thompson, 41 Mo. 25; Singer Mfg. Co. v. Schull, 74 Mo. App. 486. (7) Said act cannot have the effect of giving a right to recover taxes which have been paid more than five years prior to the commencement of this suit. Sec. 4273, R. S. 1899.

BURGESS, P. J.—This cause is before this court upon cross appeals.

On the 2nd day of August, 1902, plaintiff instituted this suit under section 650, Revised Statutes 1899, to determine interests and quiet the title to several hundred acres of land described in the petition, of which he claimed to be the owner and to which he claimed to have title in fee simple, and alleging that the defendant claims some title, estate or interest in and to all of said lands adverse to the title of the petitioner.

On Septemebr 8, 1902, defendant filed its answer to plaintiff's petition in which it denied that plaintiff had any title or interest in said lands, and alleging title in defendant company.

On March 6, 1903, the Legislature passed an act, pp. 254-255, Laws 1903, which took effect June 21, 1903, "Relating to the setting Aside of Tax Deeds," which provides:

"That no suit, or action, in any of the courts of this State, either at law or in equity, shall hereafter be maintained by any person or corporations, against any other person or corporation, for the determination of the title to, or for the recovery of the possession of, any lands, which shall have been sold for taxes, or any interest in any such lands, or for the setting aside or cancellation of any tax-deed or sale of land for taxes, alleged to have been void, voidable or defective, unless such person or corporation so seeking to recover such lands, or some interest therein, or the setting aside

of such tax-deed or tax-sale, shall, in his petition offer to refund to the defendant therein, or to such other person or corporation, from whom and against whom such recovery is sought, in such action, all taxes paid by such defendant, or other persons, and his grantors, remote or immediate, or by those under whom he claims, together with interest thereon from the date of payment of such taxes to the date of the judgment in such action. No actual tender shall be required to be made by such plaintiff, or other person seeking such recovery or cancellation of such deed, but it shall be deemed sufficient if an offer to pay the same, as soon as the amount thereof shall be ascertained, shall be made and set out in such petition. All courts before which any such action may be brought or maintained, shall, if the judgment in such action be adverse to the defendant, or dedefendants, therein, and the recovery of such land, or any interest therein, be adjudged or decreed, find and adjudge by its decree or judgment the amount of money due to the defendant, or to other persons, on account of taxes or interest thereon paid as aforesaid, by defendant, or his grantors as aforesaid; and all such courts may, if such relief be prayed for in the answer, or the other pleading of the defendant, or other persons entitled to reimbursement, adjudge and decree that the amount so found by the court, or a jury, shall be and constitute a lien upon the lands recovered, or in controversy.''

Thereafter on September 16, 1903, plaintiff filed an amended petition, containing a second count, in which for the first time he claims that his title is based upon certain sheriff's deeds for taxes; that he and his grantor have paid a large amount of taxes on said lands for the year 1879 and up to and including the year 1898. He asks in this second count to be reimbursed for all taxes paid by him and that the amount so paid

be declared a lien on the land, provided the court should find the title to the land to be in the defendant.

Defendant filed an answer to plaintiff's amended petition, denying that plaintiff had any interest in or title to the land, and alleging the title to be in defendant company.

The trial resulted in a finding and judgment that the defendant was the legal owner of the land. The court also found that the plaintiff's claim of title was based upon sheriff's deeds for taxes and that by virtue thereof he had paid and extinguished taxes upon the land, which with interest thereon amounted to $438.16, and declared the same to be a lien upon said land.

In due time defendant filed motions for new trial and in arrest, and plaintiff filed his motion for a new trial, all of which were overruled, and exceptions timely saved by the respective parties.

Both parties appeal.

Plaintiff showed a derivative title from the United States Government, which included tax deeds for all the land in question to Logan D. Dameron of date May 5, 1881. These deeds were executed by the sheriff of Shannon county in pursuance of sales made by the sheriff of said county under judgments rendered against the apparent record owners of said land for delinquent taxes, upon which said judgments executions had been duly issued. These deeds were recorded in the recorder's office of said county on May 6, 1881.

Defendant to sustain the issues on its part introduced the following evidence.

Defendant read original deed from Wm. Geninn to Cosmore G. Bruce, conveying lots 2 and 3 of the northwest quarter and lots 2 and 3 of the northeast quarter of section 3, township 29, range 3, dated July 5, 1859, recorded May 8, 1860, in Book C at page 281 of the Deed Records of Shannon county, Missouri, and re-

recorded on March 20, 1894, in Book 31 at page 293 of the Deed Records of Shannon county, Missouri.

Defendant read original deed from Jacob Armor to Cosmore G. Bruce conveying lots 4 and 5 of the northeast quarter and lots 4 and 5 of the northwest quarter of section 3, township 29, range 2, dated July 5, 1859, recorded May 8, 1860, in Book C at page 282 of the Deed Records of Shannon county, Missouri, and re-recorded March 20, 1894, in Book 31 at page 295 of the Deed Records of Shannon county, Missouri.

Defendant then read a quit-claim deed from Emily B. Smith and husband and Chas. W. Bruce and wife to John C. Brown, dated May 8, 1895, recorded May 20, 1895, in Book 31 at page 308, conveying all the lands purchased by Cosmore G. Bruce and described in the foregoing deeds.

Next a warranty deed from William Ritchie to Henry B. Reeves conveying the south half of the southwest quarter and the south half of the southeast quarter of section 11, township 29, range 2 west, dated March 29, 1860, recorded January 6, 1870, in Book G at page 133, re-recorded June 16, 1894, in Book 31 at page 395.

Defendant read a warranty deed from Henry B. Reeves and wife to Alonzo K. Reynolds, dated June 9, 1860, recorded January 6, 1870, in Book G at page 134, and re-recorded on June 16, 1894, in Book 31 at page 397, conveying the land last above described.

The record of this deed was destroyed by fire on December 31, 1870.

Defendant read a quitclaim deed from Chas. S. Reynolds and wife, heirs of Alonzo K. Rynolds, to John C. Brown, dated May 2, 1894, recorded June 16, 1894, in Book 29 at page 117, conveying the land last above described.

Defendant next read a warranty deed from Barnett Orrick to A. L. Whitely, conveying the north half of the southwest quarter and the west half of the

southeast quarter and lot 1 of the northwest quarter and lot 1 of the northeast quarter of section 3, township 29 north, of range 2 west, dated May 9, 1859, recorded May 14, 1860, in Book C at page 289 and re-recorded March 16, 1894, in Book 31 at page 284.

Defendant then read a warranty deed from A. L. Whitely to George W. Manning, conveying the land last above described, dated June 9, 1859, recorded May 15, 1860, in Book C at page 293, and re-recorded March 16, 1894, in Book 31 at page 285.

Defendant then read a warranty deed from Geo. W. Manning to Michael J. Kine, conveying the land last above described, dated January 11, 1867, recorded January 31, 1870, in Book G at page 189, and re-recorded March 16, 1894, in Book 31 at page 289.

At the time of the offering in evidence of each one of said deeds by defendant, plaintiff objected to the introduction of the deed for the reason that the plaintiff's claim of title rested upon a sheriff's sale under an execution for back taxes for the year 1878, and the deed in evidence did not show it to have been recorded before the sale for back taxes as shown by plaintiff's deed, which objection was overruled by the court, to which ruling the plaintiff excepted at the time.

Defendant offered certified copy of the will of Michael J. Kine to his wife, Bridget M. Kine, bequeathing to her all his property both real and personal, dated August 30, 1873, recorded June 9, 1879, in Will Book A at page 157.

Defendant read a quitclaim deed from Bridget M. Kine to Missouri Lumber & Mining Company, dated June 7, 1899, recorded June 26, 1899, conveying all of tract 4.

Defendant, by agreement, read the affidavits of Emil B. Smith and Perry Lewis, the former showing that prior to her marriage with Charles B. Smith she was the widow of Cosmore G. Bruce, who resided in

Lake county, Ohio, in the year 1859, and that Smith died in the year 1881, and left one son Charles W. Bruce as his only child and heir. The affidavit of Perry Lewis was to the effect that he knew personally and well Alonzo R. Reynolds and his brother Charles S. Reynolds, late of Erie county, Pennsylvania, during their lifetime. That said Alonzo died about the year 1894, leaving no mother, father, sister or children surviving him. That he did leave his brother Charles S. surviving him, but that he also died about the year 1896.

Defendant then read in evidence a quitclaim deed from John C. Brown to the Missouri Lumber and Mining Company, dated June 3, 1899, recorded June 26, 1899, in Book 36, page 366, conveying the land in question in this suit.

The records of all of said deeds which were recorded prior to the 31st day of December, 1870, were destroyed by fire at that date.

Plaintiff insists that the tax deeds of May 5, 1881, under which he claims title, being based as they were upon judgments of the circuit court of Shannon county for taxes assessed against the patentees of the land, were sufficient to vest in plaintiff the legal title, as against defendant who claims under deeds, the record of which was burned December 31, 1870, it not appearing that either the collector or purchaser at the tax sale had any notice of said deeds. In support of this contention plaintiff relies upon Vance v. Corrigan, 78 Mo. 94; Payne v. Lott, 90 Mo. 676; Evans v. Robberson, 92 Mo. 192; Allen v. Ray, 96 Mo. 547, which hold that suits for taxes against land must be brought against the record owner of the land, and that every person not having actual notice as to who is the real owner of lands other than as indicated by the deed records has the right to rely upon the records provided by law to be kept for the purpose of showing

such ownership, and that a purchaser of such lands at a sale thereof without notice under a judgment against the record owner for back taxes will be protected in his title even as against the true owner. But this rule does not apply to a purchaser under a judgment in a back tax suit brought against the apparent owner of land where the deed from such apparent owner has been recorded before suit brought for the taxes, although the deed book containing the record of the deed had been consumed by fire before the bringing of the suit. In such circumstances the purchaser at the tax sale is not an innocent purchaser within the meaning of the law, because the owner does all the law requires of him in placing his deed upon record, and it is no fault of his that the record of the deed is destroyed.

Crane v. Dameron, 98 Mo. 567, was an action of ejectment for a tract of land in this same county which was entered by Cyrus K. Brown in 1858, and on the 10th day of August, 1859, Brown, by warranty deed, conveyed the land to plaintiff, whose deed was on the fifth day of March, 1860, filed for record in the office of the recorder of said county, and, on the eighth of March, 1860, the same was recorded among the land records of said county, in Deed Book C, at pages 114 and 115. On the thirty-first of December, 1871, Deed Book C was destroyed by fire. The taxes on the land for the years 1871 to 1878, inclusive, were assessed to Brown. A suit for delinquent taxes for these years was instituted by the collector of said county against this tract of land, to which Brown was made the party defendant and on the sixth day of November, 1880, judgment was rendered for the taxes, and on the fifth day of May, 1881, the land was sold under this judgment. The defendant Dameron became the purchaser, received his tax deed therefor, and put the same on record in said county. The court, before whom the

case was tried without a jury, found for the defendant, and plaintiff appealed. It was held that a purchaser under a judgment in a back tax suit brought against the apparent owner of land will not be protected against the holder of a recorded deed from such apparent owner although the deed book containing the record of the deed had been destroyed by fire before the bringing of the suit; that the destruction of the deed record book containing the record of the deed, did not in contemplation of law destroy the deed, nor the effect of its record.

Geer v. Lumber and Mining Co., 134 Mo. 85, was an action of ejectment for certain lands in this same county. The plaintiff claimed title under deed made by the sheriff of said county in 1881, under judgments for taxes. Defendants claimed title under deeds from the patentee of the land to one Auld. These deeds were dated in the sixties, and were recorded in Shannon county in 1870. After their record, the record of deeds in which they were recorded was destroyed by fire, but the deeds were not again recorded, until after the tax sales under which plaintiff claimed. It was held that under Revised Statutes 1889, section 2419, providing that deeds duly acknowledged, certified, and recorded, "shall from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed in law and equity to purchase with notice," the recording of a deed is notice, although the records were subsequently destroyed; and the purchaser at a tax sale under a judgment against the apparent owner of land will not be protected against the real owner, the record of whose deed was destroyed.

Weir v. Lumber Co., 186 Mo. 388, was an action under the statute to ascertain the rights of the respective parties to a tract of this same class of lands,

also in Shannon county, and the same rule was announced as in Crane v. Dameron, supra, and Geer v. Lumber Co., supra, and those cases followed.

If these adjudications are sound law, as we think they are, it necessarily follows that defendant was the legal owner of the lands in question at the time of the bringing of this suit, and that the court was correct in so ruling.

There was no laches upon the part of the defendant in this case. [Weir v. Lumber Co., supra.]

Another contention upon the part of plaintiff is that even though his title be held invalid he is entitled under the act of 1903 to recover all the taxes paid by him and his grantors at and subsequent to the tax sales. Upon the other hand, defendant's position is that the act of 1903 only applies in case the taxes are paid subsequently to the taking effect of this act. It is not claimed by plaintiff that prior to this act recovery could be had for taxes paid by a person under circumstances like the case at bar.

There are several reasons why in our opinion plaintiff cannot invoke the aid of the act in this instance. In the first place, the act confers no such right upon the plaintiff, who sues for the determination of the title to, or for the possession of land, but by express terms provides that all taxes paid by the *defendant* or other persons, and his grantors, remote or immediate, or by those under whom he claims, together with interest thereon from the date of payment of such taxes to the date of the judgment in such suit, may, in the event the judgment be adverse to the defendant, constitute a lien upon the lands recovered, or in controversy, but confers no such right upon a plaintiff. Besides, the act makes it a condition precedent to the maintenance of such suit that the plaintiff therein shall, in his petition, offer to refund to the defendant therein, or to such other person or corporation from whom and

against whom such recovery is sought, all taxes paid by such *defendant* or other person. But notwithstanding these plain and explicit provisions of the act, in this case defendant seeks to avail himself of the terms of the act just as he might do if he were the defendant in the case, and this, too, in the face of the provisions of the act to the contrary. The act is in derogation of the common law, and should be strictly construed, but it would require a very liberal and unwarranted construction to give it the construction sought to be placed upon it by plaintiff.

Second. The act having been passed subsequently to the institution of this suit, cannot affect the rights or the interest of the parties thereto. As a general rule the plaintiff must recover, if at all, upon a cause of action existing at the commencement of the suit. [Barber Asphalt Paving Company v. Ridge, 169 Mo. 376.] Not only this, but to permit the plaintiff to invoke the provisions of the act in his behalf in this case would be to give it a retrospective effect, which cannot be done in the absence of some provision in the act indicative of the intent of the Legislature that it should have such effect. [Haarstick v. Gabriel, 200 Mo. 237.] ·

It creates rights which did not exist before its passage, and expressly provides that *hereafter*, that is, after this act takes effect, no suit shall be maintained, etc., clearly indicating that the act was intended to be prospective rather than retrospective. The act was before the St. Louis Court of Appeals for construction in the case of Petring v. Current River Land & Cattle Company, 111 Mo. App. 373, and it was held that it was prospective, and applied to future tax sales only. GOODE, J., in speaking for the court in that case, said:

"The sale itself occurred more than twenty-four years before the act took effect and the taxes were all paid prior to its taking effect. The question in the case, therefore, is whether the act embraces those past

transactions and the reimbursement of the defendant for its outlay may be made a condition on which the plaintiffs will be afforded the redress they pray. Our Constitution forbids the enactment by the General Assembly of laws retrospective in their operation. [Const., art. 2, sec. 15.] If the proposition involved was one of constitutional law, our jurisdiction would not include it; but we regard it as one of interpretation —the meaning of the statute, instead of its constitutionality. It is an established rule for the interpretation of legislative acts that they shall be construed as prospective in intention and application and not retrospective, unless their language calls for retroactive operation. [Thompson v. Smith, 8 Mo. 723; State ex rel. Parker v. Thompson, 41 Mo. 25; State ex rel. v. Hays, 52 Mo. 578; State ex rel. v. Ferguson, 62 Mo. 77; Leete v. State Bank, 115 Mo. 184.] The language of this act looks to the future. It says no suit or action shall hereafter be maintained for the determination of title to, or for the recovery of possession of, any lands which shall have been sold for taxes, etc. The language imports future sales, and affords no room for a construction which would extend the remedy provided by the act so as to cover prior transactions, even if such construction was favored; but it is discountenanced. The doctrine that statutes will be held to operate prospectively when their language permits that ruling, has been applied to just such cases as this one. [Auditor General v. Supervisors, 76 Mich. 295; Inv. Co. v. Thayer, 7 S. D. 72; Moody v. Hoskins, 64 Miss. 468.] The only theory on which it can be contended that the act in question ought to have a retrospective operation is that it relates exclusively to the remedy and not to the right. Acts changing remedies in any way that do not destroy or impair vested rights, are excluded from the rule invalidating retrospective laws, even when they are in-

tended to retroact. But remedial laws are not allowed a retrospective operation when they create an additional disability or new defense, or otherwise impair vested rights. [Missouri cases cited above; Couch v. Jeffries, 4 Burr. 2460; Dash v. VanKleeck, 7 Johns. 477; Wade on Retrospective Laws, sec. 198, et seq.] The courts have announced widely divergent opinions as to when statutes changing remedies and enacted to operate retrospectively so far impair vested rights as to be unconstitutional and invalid. We have no occasion to look into the authorities on the subject. The language of the statute in question calls for future operation only, and should not be interpreted to retroact merely because that interpretation would be equitable and enforce an obligation morally incumbent on the plaintiffs to repay the taxes on their land which the defendant had discharged. Such an interpretation would disregard the language of the act.''

Our conclusion is that the judgment in so far as it is in favor of defendant should be affirmed, but in so far as it is in favor of plaintiff for taxes paid upon the lands and declaring the same to be a lien thereon, it should be reversed. It is so ordered.

All concur.